UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RAHEEM DUNLAP,

                      Petitioner,                    **REPORT AND RECOMMENDATION**

      -against-

                                                 05 Civ. 7054 (SCR)(GAY)

J. BURGE, Superintendent, Auburn
Correctional Facility,

                      Respondent.
--------------------------------------------------------X

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

Petitioner Raheem Dunlap ("petitioner"), proceeding *pro se*, has filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I respectfully recommend that the Court deny the petition in its entirety.

## I. PROCEDURAL HISTORY

On May 22, 2002, a Westchester County jury convicted petitioner of first degree assault (two counts), second degree attempted robbery (two counts), first degree criminal use of a firearm, second degree assault (two counts) and first degree reckless endangerment. He was subsequently sentenced, as a violent felony offender, to terms of imprisonment as follows: fourteen years for each of the first degree assault counts and on the count of first degree criminal use of a firearm; seven years for each of the second degree attempted robbery counts and each of the second degree assault counts; two and one-third to seven years on the count of first degree reckless endangerment. Petitioner is presently incarcerated at the Auburn Correctional Facility in Auburn, New York.

Petitioner, by and through counsel, appealed the judgment of conviction to the Appellate Division, Second Department, on the ground that the pretrial identification procedures were unduly suggestive in violation of petitioner's due process rights. See Brief for Appellant-Defendant, appended as Exh. E to Respondent's Memorandum of Law ("Resp. Mem."). The Second Department, by Decision and Order dated July 19, 2004, affirmed the judgment of conviction. See People v. Dunlap, 9 A.D.3d 434, 780 N.Y.S.2d 171 (2d Dep't 2004). The New York Court of Appeals denied petitioner leave to appeal on October 21, 2004. See People v. Dunlap, 3 N.Y.3d 739, 820 N.E.2d 298, 786 N.Y.S.2d 819 (2004).

On or about July 19, 2005, petitioner timely filed the instant Petition for a Writ of Habeas Corpus, wherein he reasserts the argument he raised on direct appeal.

## II. BACKGROUND

On August 27, 2001, around twelve noon, Mount Vernon cabdriver Raphael Bridge was dispatched to pick up a fare at 505 South Second Avenue in Mount Vernon, New York (253-54).[1] The weather was clear, bright and sunny (259, 348). When Bridge arrived at the pickup location, he observed a man standing at the corner (254). Bridge drove past the building, made a U-turn and pulled up to the door; the man remained on the corner, approximately ten to fifteen feet from the cab. A woman–Joan Grant–came out the building and got into the rear passenger side of Bridge's cab (254-57). The man walked up to the cab, bent down at the open front passenger window and asked Bridge if he would take him to Union Avenue (257). Bridge agreed, and the man

---

[1] Numbers in parentheses refer to pages from the trial transcript.

walked around the front of the cab, got into the rear driver's side behind Bridge and sat next to Grant (257-58, 350). Grant looked at the man; they exchanged hellos (350-51).

As Bridge proceeded onto First Avenue, the man asked what the fare was; Bridge told him three dollars and the man handed a twenty-dollar bill to Bridge through a slight opening in the partition (259-60, 351). Bridge took the twenty dollars and, while stopped at a light, he turned around and handed the man his change (260, 351). Grant turned away for a little and, when she looked back, the man took out a black mask from his pocket, put it on and took out a gun from near his waist (351-52, 375). As Bridge turned on to Fourth Street, he heard a male voice behind him say "give me your money" (261). Grant heard the man say "this is a stickup" and heard him tell Bridge "give [me] the money" (351). Bridge turned around and saw the barrel of a gun (261). Bridge tried to push the gun away with his right hand while steering the car with his left; the man pulled the partition open, stuck his head through and hit Bridge with the gun on the right side of his head (261, 353). The man struck Bridge with the gun again, this time in his eye; then the man was "all over" Bridge, repeatedly hitting him with the gun (262). Bridge did not stop the cab; Grant was scared and yelling (353). The cab went onto the curb and kept hitting things along the sidewalk (354). Bridge blacked out (262). The cab crashed into a telephone pole (412). Bridge was pinned under the dashboard (262-63). Police arrived on the scene and observed two victims: Bridge inside the cab and Grant lying in the street (539). Rescue workers extricated Bridge; Bridge and Grant were taken to Jacobi Medical Center (263, 356).

Police came to the hospital and asked Bridge for a description of the man (264). Bridge described him as a light-complexioned African-American, with spots on his face,

wearing a white T-shirt and jeans (264). At approximately 6:00 p.m. that evening, the police showed Bridge an array of six photographs; Bridge could not positively identify anyone from the photos, and told police he could not see the photos clearly because his vision was blurred (265-66). Bridge said he wasn't sure, but he thought photo number two could be the man (435). Photo number two was not Raheem Dunlap (435, 493). On August 31, 2001, after Bridge was released from the hospital, the police asked him to view another set of six photographs (295-96). Photo number two from the first array was not in the second array (436); a different picture of petitioner was used in the second array (460-61). Bridge identified the photo in position number six as the person who attempted to rob him on August 27th (297-98). Bridge later learned that photo number six was a picture of Raheem Dunlap (297).

Grant was hospitalized for two days (357). A police officer spoke to Grant while she was in the hospital (on the day of the incident) and asked her for a description of the man; Grant did not give a description (367). A short time later, police officers returned and showed Grant an array of six photographs and asked if she could identify the man (368, 372-73, 393). Grant told police that she thought the photo in position number one was the man, but refused to choose because she couldn't be sure and wanted to see another photograph (369). Raheem Dunlap's photograph was in position number one (494). After Grant was released from the hospital, she provided a description of the man to police; Grant described the man as a young African-American with a light complexion (367). On September 9, 2001, the police showed Grant another set of six photographs; Grant selected number three (369-70, 392). Photo number three was a picture of Raheem Dunlap (437). Other than Dunlap's photo, no other

4

photographs from the first array were included in the second (437). Dunlap's photo, however, was different from the one that appeared in the first array (460-61).

At trial, Bridge identified defendant Raheem Dunlap as the man Bridge saw standing on the corner near 505 South Second Avenue (255-56). Grant also identified Raheem Dunlap at trial as the man seated next to her in Bridge's cab (352), and as the man she identified in the second photo array (383). Grant further testified that, on August 27, 2001, Dunlap was wearing dark jeans, a white T-shirt, a baseball hat and a do-rag under the hat (361).

## III. STANDARD OF REVIEW

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). Subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, which amended 28 U.S.C. § 2254, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Further, pursuant to 28 U.S.C. § 2254(d)(2), a federal court may grant habeas relief when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." To the extent that a habeas petition challenges factual findings, "a

5

determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, "the ultimate question of the constitutionality of pretrial identification procedures is a mixed question of fact and law, and hence is not governed by the presumption." Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir. 1986).

## IV. PRETRIAL IDENTIFICATIONS

A. Wade Hearing

Prior to trial, petitioner moved via omnibus motion to suppress the identification evidence. The trial court granted petitioner's motion to the extent it agreed to conduct a Wade[2] hearing "to determine whether any procedures which were employed by the police were unduly suggestive and, if so, whether an independent source exists for an in-court identification." See Resp. Mem., Exh. C, at 4. The trial court conducted the hearing on May 15, 2002 and May 16, 2002. Based upon the evidence presented at the hearing, the trial court made the following findings of fact (See Resp. Mem., Exh. D, at 1-3):

On August 27, 2001, Detective Shawn O'Connor went to Jacoby Hospital with two duplicate six-picture photo arrays, wherein Rasheem Dunlap's photo appeared in position number one. O'Connor showed the photo array to Bridge, who said he could not make a positive identification because he could not see too well due to injuries he received in the crash. Bridge thought it might be photo number two, but he was not

---

[2] United States v. Wade, 388 U.S. 218 (1967).

sure. O'Connor then showed the duplicate photo array to Grant, who stated that she was not sure but believed it was photo number one.

On August 31, 2001, Detective Paul Puccini showed Bridge a second photo array, wherein petitioner's photo appeared in position number six. The remaining photos were different from the ones included in the previous array shown to Bridge. Bridge identified photo number six.

On September 9, 2001, Detective Puccini showed Grant a second photo array, wherein petitioner's photo appeared in position number three. The remaining photos were different from the ones included in the previous array shown to Grant. Grant identified photo number three as the perpetrator.

The trial court also noted "that despite the differences of individual photos, each and all arrays contain photos of young, black males appearing to be in the late teens with varying degrees of acne and the same approximate hair style." See id. at 3.

Based upon these findings of facts, the trial court concluded that, under the totality of the circumstances, the pretrial identification procedures were not unduly suggestive and did not deny petitioner due process of law. See id. at 3-4. Accordingly, the trial court denied petitioner's motion to suppress any identification testimony.

B. Direct Appeal

On direct appeal, the Second Department held that, under the totality of the circumstances, the photographic arrays were not unduly suggestive. See People v. Dunlap, 9 A.D.3d at 435-36. The Second Department noted that "[t]wo separate showings of a suspect's picture in successive photographic arrays are not per se impermissibly suggestive" and, further, that "the fact that a suspect is the only person

7

whose photo was repeated in successive photographic arrays, while a practice not to be encouraged, does not per se invalidate the identification procedure." Id. at 435 (citations omitted). The Second Department also noted that "[a]lthough the defendant was the only person whose image was repeated in the successive photographic arrays, a different photograph of the defendant was used and his photograph was placed in different locations in the successive arrays." Id.

    C.  Petitioner's Instant Claim

Petitioner presently asserts that he is entitled to habeas relief because the pretrial identification procedures violated his due process rights. Petitioner specifically contends that the photo arrays shown to Bridges and Grant were unduly suggestive because his was the only photo repeated in the successive arrays.

The Due Process Clause prohibits the use of pretrial identification procedures that are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See Simmons v. United States, 390 U.S. 377, 384 (1968). In the Second Circuit, courts evaluate challenges to in-court identification testimony based upon pre-trial identification procedures using a two-step inquiry: (1) was the pre-trial identification procedure unduly suggestive of the suspect's guilt and, if the answer is affirmative, (2) was the in-court identification "independently reliable rather than the product of the earlier suggestive procedures." See United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990). If, under the first prong, the court determines that the pre-trial identification procedures were not suggestive, "independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury." See United States v. Wong, 40 f.3d 1347, 1359 (2d

Cir. 1994) (quotation and citation omitted). The principal question in determining whether a photo array is unfairly suggestive is "whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [the petitioner] was more likely to be the culprit." See Jarrett, 802 F.2d at 41 (quotation and citation omitted). Ultimately, however, the question of whether a pre-trial photo identification procedure was unduly suggestive turns on the reviewing court's evaluation of the totality of the surrounding circumstances. See Simmons, 390 U.S. at 383.

      1. *Suggestiveness*

The Court has examined copies of the photo arrays at issue and notes that, although defendant was the only person whose image was repeated in the successive arrays, a different photograph of the petitioner was used and his photograph was placed in different locations in the successive arrays. However, all of the photographs depict petitioner with a similar facial expression, from an almost identical angle. This Court would be hard-pressed to conclude that the three pictures of petitioner were so different that the successive viewings were not unnecessarily suggestive. Further, while the use of a suspect's photograph in successive arrays is not automatically unduly suggestive, doing so "creates a greater risk of impermissible suggestiveness, especially when the initial identification is tentative, and a positive identification is only made after successive displays." See United States v. Greer, No. 2:95-CR-72, 1997 WL 82799, at *2 (D. Vt. Feb. 19, 1997).

Here, Grant tentatively identified petitioner from the first array and positively identified him from the second; Bridge tentatively identified someone other than

9

petitioner from the first array and positively identified petitioner from the second. Moreover, it was only a matter of days between the successive viewings–four days as to Bridge and thirteen days as to Grant. The Court is additionally troubled by the fact that, although Bridge tentatively identified the person in photo number two from the first array, that particular photograph was not included in the second array shown to Bridge. In sum, the totality of the circumstances compels the Court to conclude that the successive arrays were unduly suggestive.

      2. *Independent Reliability*

The Court must therefore determine whether, under the totality of the circumstances, the identifications were independently reliable. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199 (1972).

Bridge had ample opportunity to view Dunlap prior to the crime (factor 1). Bridge arrived at the pickup location around midday, and the weather was clear, bright and sunny. Bridge observed Dunlap standing on the corner, ten to fifteen feet away. Dunlap approached the cab, bent down at the front passenger window (which was open) and spoke to Bridge. Bridge also had an opportunity to view Dunlap when Bridge turned around to hand Dunlap his change. However, there is no indication in the record that Bridge had any motivation to pay particular "attention" to Dunlap's physical characteristics prior to the crime (factor 2); Bridge was likely motivated to do so after the

10

robbery began, but Dunlap had donned a mask at that point. Bridge provided a fairly accurate and detailed description of the perpetrator at the hospital, several hours after the incident and prior to viewing the first photo array (factor 3). He tentatively identified someone other than Dunlap from the first photo array, and positively identified Dunlap from the second array–which cuts the other way given the suggestiveness of the successive arrays (factor 4). Finally, only four days passed between the crime and Bridge's positive identification from the second photo array (factor 5). Having considered these factors, the Court concludes that Bridge's opportunity to view Dunlap, the accuracy of his prior description and the time between the crime and the pretrial identification strongly support the reliability of Bridge's identification. Accordingly, to the extent that Bridge's identification of Dunlap may have been the product of undue suggestiveness, I respectfully recommend that such suggestiveness was cured by the reliability of Bridge's identification.

Grant also had ample opportunity to view Dunlap prior to the crime because he was seated next to her in the back seat of the cab (factor 1). Like Bridge, however, there is no indication in the record that Grant was motivated to pay particular attention to Dunlap's physical characteristics (factor 2). Unlike Bridge, Grant did not provide a description of the perpetrator until after she viewed the first photo array (factor 3); she then described him only as a young, light-complexioned African-American–with no mention of his clothing or his facial acne. Bridge tentatively identified Dunlap from the first array, and positively identified him from the second array (factor 4). As with Bridge's identification, given the suggestiveness of the successive arrays, this factor cannot militate in favor of finding that Grant's identification was independently reliable.

11

Finally, the fact that Grant's positive identification occurred thirteen days after the crime does not seem probative one way or another (factor 5). Thus, other than Grant's opportunity to view Dunlap, the indicia of reliability are weak, at best. Considering the totality of the circumstances, the Court concludes that Grant's photo array identification was not independently reliable. Accordingly, I respectfully recommend that admitting Grant's identification of Dunlap was error.

## V. HARMLESS ERROR ANALYSIS

"A habeas petitioner is entitled to relief only if the constitutional error at trial was not harmless." Brown v. Keane, 355 F.3d 82, 91 (2d Cir. 2004). Following the passage of the AEDPA, "it is an open question in this circuit whether . . . the applicable test on habeas review of a state conviction remains the one set forth in *Brecht*, or instead should be a determination 'whether the state court's decision was contrary to, or involved an unreasonable application of *Chapman*.'" Id. (internal quotation and citations omitted). See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (trial error harmless if it does not have a "substantial and injurious effect or influence" on the jury's verdict); Chapman v. California, 386 U.S. 18, 24 (1967) (trial error may be overlooked if it is "harmless beyond a reasonable doubt"). The Second Circuit partially resolved the issue in Gutierrez v. McGinnis, 389 F.3d 300 (2d Cir. 2004), wherein it held that "when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied *Chapman*." Id. at 306. Here, however, the state court did not reach the harmless error issue because the Appellate Division found that the photographic arrays were not unduly suggestive. See People v. Dunlap, 9 A.D.3d at 435-36. Nonetheless, even applying the more onerous *Chapman*

12

standard,[3] any error in admitting Grant's identification of Dunlap was harmless.

At trial, Locksey Manning testified that he saw the cab hit the light pole (578). As Manning approached within three or four feet of the cab, a man exited the cab through its broken windshield, stood up on the hood, paused and looked at Manning and then stepped off and headed across the road (578). The next day, Manning positively identified petitioner from a six-photo array as the man who exited the cab via the windshield (464, 579-83, 602-03). A few hours after the incident, pursuant to a search warrant, police officers recovered a black neoprene mask from Rasheem Dunlap's residence (418-20). Additionally, at the time of his arrest on September 1, 2001, Dunlap had a laceration on the bridge of his nose and another to the left side of his ear (429-30). Moreover, Detective Mangeri recovered a key from the back floor area of Bridge's cab (542); Detectives O'Connor and Soreca confirmed that the key opened and closed the front door to petitioner's residence at 228 Union Avenue (496-97, 562, 565), conclusively linking Dunlap to Bridge's cab.

Thus, even without Grant's identification of Dunlap, the evidence linking him to the attempted robbery was very strong. The case against Dunlap is even more compelling when the above evidence is considered in conjunction with Bridge's identification of Dunlap–which, as discussed above, was properly admitted. Accordingly, I conclude, and respectfully recommend, that any error in admitting Grant's identification of Dunlap was harmless beyond a reasonable doubt.

---

[3] See Gutierrez, 389 F.3d at 305 ("*Chapman* is considerably more generous to prejudiced defendants than is *Brecht*.").

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend that the instant petition for a writ of habeas corpus be denied in its entirety.

## VII. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b)(3) of the Rules governing § 2254 proceedings, the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Rule 11 of the Rules governing § 2254 proceedings; Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v, Secretary of H.H.S., 892 F.2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated: May 12, 2006
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS
UNITED STATES MAGISTRATE JUDGE